**MISSOURI PACIFIC EMPLOYES' HOSPITAL ASSOCIATION, Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, and the United States Department of Labor, Defendants.**

No. 83–1045C (A).

United States District Court,
E.D. Missouri, E.D.

Oct. 19, 1983.

Gerald R. Ortbals, Dale G. Wills, St. Louis, Mo., for plaintiff.

Wesley D. Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for defendants.

Karen L. Handorf, Washington, D.C., for Secretary of Labor.

## MEMORANDUM AND ORDER

HARPER, District Judge.

This matter is before the Court on defendants' motion to dismiss on the grounds that the Court lacks jurisdiction over the subject matter, and the plaintiff has failed to state a claim upon which relief can be granted. Federal Rules of Civil Procedure 12(b). The complaint alleges that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1337(a).

This is an action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (hereinafter referred to as ERISA), against the United States Department of Labor (hereinafter referred to as DOL), and Raymond J. Donovan, the Secretary of Labor. The plaintiff is Missouri Pacific Employes Hospital Association (hereinafter referred to as Association), a not-for-profit corporation, which maintains its principal place of business in St. Louis, Missouri.

In its three-count complaint, plaintiff seeks judicial review of what it alleges is a final decision of DOL regarding the applicability of ERISA to plaintiff. Second, if ERISA applies, plaintiff asks that the court limit DOL to prospective application of its provisions to plaintiff. Finally, plaintiff seeks a preliminary injunction staying judicial enforcement of an administrative subpoena duces tecum issued to it by DOL.

The Association provides pre-paid health care to its members, according to a published schedule of benefits, through arrangements with health care providers such as hospitals or private physicians. Active and retired employees of the Missouri Pacific Railroad constitute the majority of the Association's approximately seventeen thousand members.

The facts relevant to the motion to dismiss indicate that Gregory P. Egan, then Area Administrator for DOL, sent a letter to Joan M. Newman, ERISA counsel for the Association, in which he informed her that "[i]t would appear at this time from a very limited review of the Association's governing documents that the Association is an employee welfare benefit plan * * * " under ERISA § 3(1), 29 U.S.C. § 1002(1). When Egan's successor subsequently issued a subpoena duces tecum, directing the Association to produce certain specified records and documents, the Association refused to comply.

Plaintiff interprets the letter, and a subsequent conversation with Egan's successor, as final agency action, reviewable in

this Court. Plaintiff maintains that, as an employer, since it neither established nor maintains the Association, and its membership includes eligible persons not employed by Missouri Pacific Railroad, it is not an employee welfare benefit plan. Thus, plaintiff seeks a declaratory judgment regarding its status under ERISA, and a preliminary injunction, enjoining enforcement of the subpoena, pending a determination by the Court as to whether the Association is an employee welfare benefit plan.

In their motion to dismiss, defendants urge the Court to deny the request for injunctive relief, as plaintiff has an adequate remedy at law. As to ERISA's applicability to plaintiff, defendants argue that the issue of coverage is not ripe for judicial review. Because this Court agrees that neither judicial review of the issue of coverage, nor an award of injunctive relief, is appropriate, it is unnecessary to reach the substantive issues plaintiff raises.

■ In ruling on a motion to dismiss, the Court construes the allegations of the complaint favorable to the plaintiff. *Tanner v. Presidents-First Lady Spa, Inc.,* 345 F.Supp. 950, 952 (E.D.Mo.1972). "[A]ll well-pleaded allegations of the complaint must be accepted as true * * * as well as all inferences which may reasonably be drawn from the facts alleged." *Park View Heights Corporation v. City of Black Jack,* 467 F.2d 1208 (8th Cir.1972). The Court grants such a motion only when completely satisfied that the plaintiff cannot establish any facts sufficient to sustain his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court set forth the standard which governs judicial review of agency action. While acknowledging the presumption in favor of judicial review found in earlier cases and the Administrative Procedure Act, the Court imposed a ripeness requirement as a prerequisite to judicial review. 387 U.S., at 149–152, 87

S.Ct., at 1515–1517. To satisfy the ripeness requirement, the issues must be "fit" for judicial resolution. In addition, it must appear that deferred judicial review will result in substantial hardship to the party seeking relief. 387 U.S., at 152, 87 S.Ct., at 1517. Applying the standard to the instant case leads to the conclusion that the agency action is not sufficiently ripe for judicial review.

■ Factors relevant to a determination of whether an issue is fit for judicial resolution include the nature of the questions presented and the character of the challenged agency action. Courts display greater willingness to review agency action where the question presented is legal, rather than factual. *Abbott Laboratories,* supra; *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association, Inc.,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). From the record in this case, it is apparent that factual questions remain which require resolution prior to judicial review. For example, the record neither discloses the origins of the Association, nor fully describes its members. Thus, determination of the issues must involve more than an analysis of the statute and existing case law. See *National Automatic Laundry and Cleaning Council v. Schultz,* 443 F.2d 689 (D.C. Cir.1971).

■ The finality of the agency action constitutes the second important factor in determining if the issues are fit for judicial resolution. *Abbott Laboratories,* supra. Courts decline to review agency action that is not final, *National Automatic Laundry,* supra, although judicial review becomes available once the agency renders its final decision. *Donovan v. Shaw,* 668 F.2d 985 (8th Cir.1982).

■ It is, therefore, necessary to determine whether DOL's action in the instant case is final. DOL maintains that its action is not final, yet the agency characterization of its action is not determinative. *Abbott Laboratories,* 387 U.S., at 149, 87

S.Ct., at 1515. Similarly, informality does not automatically preclude a decision that the action is final, although the Supreme Court relied in part on the formality of the decision in finding final agency action in *Abbott Laboratories*. It is also necessary to identify the administrative level at which the decision issued, and to examine the intent motivating the decision, as well as its practical effect. *National Automatic Laundry,* supra.

Here, the Area Administrator for DOL wrote to counsel for the Association, indicating that from the information then available, the Association appeared to be an employee welfare benefit plan. There is no indication, other than a statement contained in a subsequent letter from the Association, that the opinion expressed by the Area Administrator represented a decision by the head of the agency or constituted an authoritative agency ruling. *National Automatic Laundry,* supra. *Cutaiar v. Marshall,* 590 F.2d 523 (3rd Cir.1979), does not support plaintiff's position, as there the parties stipulated that the opinion letter was final.

In *Red River Transport and Development Co., Inc. v. Federal Aviation Administration,* 630 F.2d 592 (8th Cir.1980), the parties disagreed as to whether a letter from the FAA was a final order. The Court concluded that the letter was not a final order, noting its tentative nature. The letter at issue here states that "[i]t would appear at this time from a very limited review" of the available information that the Association is an employee welfare benefit plan, and then informs the Association of the proposed examination and requests additional material "to facilitate our review and to give us more information on the organization of the Association." Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, at 2. As in *Red River Transport,* supra, the nature of the letter is tentative. Based on the fact that the letter appears to express an informal, preliminary opinion of the acting Area Administrator rather than a definitive agency ruling, this Court concludes that the letter does not constitute final agency action.

The second general consideration in an analysis of whether the issues are sufficiently ripe for judicial resolution is the hardship to the parties which results from withholding judicial review. The impact on the complaining party must be "sufficiently direct and immediate." *Abbott Laboratories,* supra, 387 U.S., at 152, 87 S.Ct., at 1517. To obtain judicial review the party must face sanctions for failure to comply with the agency's direction, and compliance must necessitate a substantial change in the conduct of his affairs. *A.O. Smith Corporation v. Federal Trade Commission,* 530 F.2d 515, 524 (3rd Cir.1976).

Any consequences plaintiff might face appear insufficient to justify judicial review, as compared with other situations where courts found sufficient hardship to warrant review. In *Abbott Laboratories,* petitioners faced civil and criminal penalties for noncompliance. Compliance required that they change their product labels, related advertisements and promotional materials, and invest in new supplies. *Abbott Laboratories,* supra, 387 U.S., at 152, 87 S.Ct., at 1517. Similar circumstances were present in *Gardner v. Toilet Goods Association, Inc.,* supra, 387 U.S., at 172–173, 87 S.Ct., at 1529. Further, in both cases, the agency action adversely affected the company reputation, an important factor in the industries involved.

By contrast, the Association's position resembles that of petitioners in *Toilet Goods Association, Inc. v. Gardner,* supra. Plaintiff does not face severe penalties for noncompliance. Further, "[t]his is not a situation in which primary conduct is affected—when contracts must be negotiated, ingredients tested or substituted, or special records compiled." *Toilet Goods Association, Inc. v. Gardner,* supra, 387 U.S., at 164, 87 S.Ct., at 1524. Compliance with the subpoena does not require the Association to alter its "course of day-to-day conduct." *A.O. Smith Corporation,* supra, at 524. It is reasonable to expect that plaintiff regularly collects and records

information of the type DOL seeks, Complaint, at 9. At this stage, the only hardship compliance entailed is administrative inconvenience. Cf. *Federal Trade Commission v. Standard Oil Company of California*, 449 U.S. 232, 242–244, 101 S.Ct. 488, 494–495, 66 L.Ed.2d 416 (1980). Notwithstanding the allegations in the complaint, no reason appears why the reputation of the Association will suffer, or its members be harmed, as a result of compliance with the subpoena.

■ A court deciding whether an issue is sufficiently ripe for judicial review inquires whether review is "consistent with sound judicial administration and discretion." *National Automatic Laundry*, supra, at 695. One of the purposes of the ripeness requirement is to limit judicial review to cases where the parties have fully developed the facts and refined the issues. The Court thus limits review to actual cases or controversies; when the Court undertakes review, it thereby stands in a better position to resolve the issues.

■ A denial of review at this time also comports with the general view regarding the proper relationship between the courts and administrative agencies. In issuing the subpoena, DOL exercises investigative authority delegated to the agency by Congress. Courts should avoid unnecessary interference with the exercise of this authority. *Federal Trade Commission v. Standard Oil*, supra, 449 U.S., at 241–242, 101 S.Ct., at 493–494; *Federal Trade Commission v. Swanson*, 560 F.2d 1, 2 (1st Cir.1977).

The Secretary's investigative authority under ERISA includes the power to subpoena books, records, and other documents. 29 U.S.C. § 1134(c). (15 U.S.C. §§ 49, 50, made applicable to the Secretary.) Where the subpoenaed party refuses to comply, the Secretary may seek enforcement of the subpoena in a federal district court. At that time, the subpoenaed party may raise, and the district court consider, certain objections to the subpoena.

In an enforcement proceeding, plaintiff can challenge the subpoena on the ground that it is overly broad or unduly burdensome. *Blue Ribbon Quality Meats, Inc. v. Federal Trade Commission*, 560 F.2d 874 (8th Cir.1977). In addition, the Court may inquire whether the authority of the agency extends to the challenged investigation, and whether the information requested reasonably relates to the subject of the investigation. *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Thus, with respect to these issues, the subpoena enforcement proceeding constitutes an adequate remedy at law. *Anheuser-Busch, Incorporated v. Federal Trade Commission*, 359 F.2d 487 (8th Cir.1966).

Plaintiff correctly contends that the district court will not consider the question of coverage under ERISA in the context of a subpoena enforcement proceeding. *Oklahoma Press Publishing Company v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *Donovan v. Shaw*, 668 F.2d 985 (8th Cir.1982); *Equal Employment Opportunity Commission v. Quick Shop Markets, Inc.*, 526 F.2d 802 (8th Cir.1975). That plaintiff cannot obtain pre-enforcement review of the issue of coverage does not, however, support its claim for equitable relief. If, after investigation, DOL concludes that plaintiff is subject to ERISA, then plaintiff may raise the issue of coverage as a defense to an administrative action. Thus, an adequate remedy at law exists as to the claim that ERISA does not apply to plaintiff.

Policy considerations similar to those previously discussed also weigh in favor of postponing resolution of the issue of coverage. *Donovan v. Shaw*, supra; *Equal Employment Opportunity Commission v. Quick Shop Markets, Inc.*, supra. In *Oklahoma Press Publishing Co. v. Walling*, supra, petitioners argued that the question of coverage must be adjudicated prior to enforcement of an administrative subpoena. The Court rejected the argument. Noting that the subpoena enables the agency to fulfill its investigative function, the Court stated that to invalidate the subpoena is to question the power of Con-

gress to delegate enforcement of federal laws. 327 U.S., at 201, 66 S.Ct., at 501. The Court held that an initial determination of coverage is within the authority of the agency administrator charged with investigating violations; the administrative agency may properly use a subpoena to procure information necessary to that determination. 327 U.S., at 214, 66 S.Ct., at 508. See also, *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943) (district court could neither require the Secretary to determine coverage prior to an investigation, nor assume jurisdiction itself to decide the issue.)

The reasons discussed above require dismissal of the action, and accordingly the Court hereby sustains defendant's motion to dismiss, and the case is dismissed.